### Staunton.

### REHERD AND AL. V. LONG AND ALS.

#### October 18th, 1883.

WILLS—*Executors—Sureties—Liabilities—Case at bar.*—L. made his will in 1852. He devised 104 acres to his son S., at $3,600, whereof $1,500 was advancement, balance payable in twelve annual payments; and 103 acres to his son B., at $3,800, whereof $1,500 was advancement, balance payable in thirteen annual payments. Soon after he put devisees in possession. In 1855, S., with consent of L., conveyed his 104 acres to B., who paid him for same. L. had previously conveyed land to his son J., of the price whereof $1,500 was advancement, and held J.'s bonds for balance. By will L. directed that his wife have $100 a year out of the money payable by his three sons on said lands. Testator also directed that after advancements of $1,500 to each of his five children, and allowance to his wife, remainder, including back payments on land devised and deeded, and proceeds of personalty remaining, to be equally divided between his five children. Testator further directed that, if S. and B., or either, be unwilling to take said lands on said terms, then his executor should sell same. L. died in 1862. S., who had been appointed executor, qualified as such, giving bond with D. and G. as sureties. The bond had been destroyed. S. proceeded to collect and disburse estate, including back payments from B. and J. In 1869, A., husband of a daughter of L., brought suit to construe will and settle estate. All the heirs and the sureties were parties. Decree was rendered construing will, and directing executor to retain $1,666.66 during widow's lifetime, in order to raise her annuity, and ratifying executor's receiving payments on the land. Widow died in 1877. Then executor brought suit against B. and his vendee, R., for $1,155, balance of back payments, claiming that sum as due on the 103 acres, nothing on the other tract. Commissioner reported balance due as $888, for which a decree was entered against R., who paid the money, and against executor and his sureties for $1,034, balance of the $1,666.66 retained to raise widow's annuity, but the decree was set aside as to the sureties. P., a fourth son, and others, in 1880, brought suit against B., R., S., in his own right

and as executor, and his sureties, to recover amount for which executor was in default.   In 1882 decree was entered releasing sureties, and holding that the balance due on the 104 acres, after deducting the distributive share of S therein, was $894, and that same was a charge, under the will of L., on said land.   From this decree R. appealed.

HELD:

1. Both the evidence and the admissions of record show that the entire back payments on both the 103 and the 104 acre tracts, had passed into the executor's hands.

2. If the evidence and the admissions of record did not show this, yet the decrees in the suits to which the executor, his sureties and the heirs were all parties, establish the liability of the executor for the money, and the question must be regarded, for the purposes of this case, as *res judicata.*

3. Under the will it was the executor's duty to collect and dispose of the money due on the lands, according to its provisions.

4. In the absence of evidence directly to the contrary, it must be presumed that the official bond of the executor and his sureties was in the usual form, with a condition "for the faithful discharge by him of the duties of his trust."

5. As the law aforetime stood, when *Jones* v. *Hobson*, 2 Rand. 483, was decided, the sureties could not have been held liable for the land payments collected by the executor; but as the law stood when the bond was executed (Code 1849, ch. 131, § 2), and stands now (Code 1873, ch. 127, § 2), the sureties are liable therefor; and should not have been released.

6. The 104 acres of land devised by L. to S., and sold by S. to B., and by B. to R., is not chargeable in the hands of R. with the money for which the executor is in default to the heirs.

Appeal from decree of circuit court of Rockingham county, rendered 3d March, 1882, in the cause of Perry Long, William Long, Sarah F. Heatwole, Mollie Young, Adam Showalter, administrator of Catherine Showalter, *nee* Long, against Benjamin Long, in his right and as executor of John B. Long, deceased, George W. Reherd, James E. Reherd, Eliza A. Long, widow of John B. Long, deceased, Samuel A. Long, in his own right and as executor of John Long, Sr., Daniel Bowman and Solomon Garber, the last two being sureties of Samuel A. Long, executor of John Long, Sr.   The decree aforesaid being adverse to George

W. and James E. Reherd, they obtained an appeal from one of the judges of this court. The facts and the positions taken are indicated in the syllabus and set forth in the opinion.

*G. G. Grattan,* and *W. B. Compton,* for the appellants.

*John E. Roller,* for the appellees.

HINTON, J., delivered the opinion of the court.

The record in this cause shows that John Long died in 1862, having first made and published his last will and testament, which was duly admitted to record by the county court of Rockingham county. This will was made and executed many years before the testator's death, possibly as early as 1852. By his will he devised a tract of 104 acres, one rood and twenty-four poles to his son Samuel A. Long, at the price of $3,600, of which sum $1,500 was to be considered an advancement, and he was required to pay the balance in twelve annual payments in unequal amounts. He also devised a tract of land of 103 acres and a few poles to his son B. E. Long, at the price of $3,800, for said land, $2,550 of which was to be paid in thirteen unequal payments, the residue of said sum of $3,800, to be his advancement to make him equal with the other children of the testator. Now, although this will was made, as we have said, possibly as early as 1852, the testator evidently regarded it as taking effect at once, and so he placed these two sons, Benjamin E. Long and Samuel A. Long, in possession of their respective tracts of land soon after the will was made. And in 1855, Samuel A. Long, with the knowledge and consent of his father, sold and conveyed to his brother, B. E. Long, his tract of 104 acres, one rood and twenty-four poles, who immediately took possession of it. The second clause of the will directs that his "wife is to have the sum of one hundred dollars per year, to be paid to her yearly

out of the money which will be payable by my three sons on their land."

In the seventh clause he says, "I have previously conveyed a tract of land by deed to my son John, and in the price of the land and other ways, as charged in my book, he has received an advancement of $1,500, and I hold his bonds for the remainder that he owes on the land, which places him on an equal footing with the others."

By the eighth clause the testator directs that after the advancement of $1,500 to each of his five children, " and the allowances to my wife, the remainder of the estate, *including back payments* on the land *devised and deeded*, and the proceeds of personal property remaining, is to be equally divided share and share alike among my five children."

Upon the death of John Long, Sr., Samuel A. Long, who was appointed executor, and qualified as such, giving a bond in the penalty of $1,500, with David Bowman and Solomon Garber as sureties, and he forthwith proceeded to collect and disburse the assets of the estate, including the back payments on the land due by B. E. Long and John B. Long.

In 1869, Adam Showalter, who married one of the daughters of John Long, Sr., brought a suit in the circuit court of Rockingham county for a construction of the will and a settlement of the estate of the testator, John Long, Sr. To that suit all of the heirs and distributees of John Long, Sr., as well as the sureties of Sam'l A. Long, were made parties, and the executor was called on to render a "full account of his actings and doings as such as executor," and a decree was rendered construing the will, and a second decree was also entered directing the executor to retain in his hands or loan out the sum of $1,666.66, during the lifetime of the widow, in order to raise the sum of $100, annually, to be paid her under the provisions of the will. The court in that suit ratified and confirmed the action of the executor in receiving the payments on the real estate as well as

the personalty and no appeal has ever been taken from either of said decrees.

Subsequently, and after the death of the widow of John Long, Sr., to-wit, in the year 1877, Samuel A. Long, as executor, brought suit to recover from B. E. Long and from the appellants, George and James E. Reherd, who had purchased both tracts, viz: the tract of one hundred and three acres and the tract of one hundred and four acres one rood and twenty-four poles from B. E. Long, in August, 1871, the balance of back payments thereon. He claimed that there was due on tract of one hundred and three acres the sum of $1,155.61, with interest from the 18th of February, 1876, but did not claim anything as due on the other tract, although it too was mentioned in the bill. The cause was referred to a commissioner who reported that the balance due from B. E. Long and the appellants, the Reherds, was $887.89, with interest on $754.37 from 1st February, 1879. And for that amount the court rendered a decree against the appellants, who subsequently paid it. And also decreed against Samuel A. Long, executor of John Long, Sr., and his sureties, Daniel Bowman and Solomon Garber for $1,033.81, with interest on $878.85 part thereof from 1st February, 1879. That cause was however reheard, when the court set aside so much of the last mentioned decree as declared the sureties, Bowman and Garber, liable for the residue of the fund which was set apart during the lifetime of the widow of the testator, Long, to yield her annuity.

Whereupon the present suit was instituted by Perry Long and others, the appellees here, against the appellants, to recover the amount which the executor, Samuel A. Long, was in default to the distributees. On the 3rd of March, 1882, the court rendered a decree releasing the sureties, Bowman and Garber, and holding that the amount due on the one hundred and four acres of land "devised to Samuel A. Long by the will of his father, John Long, after deducting the distributive share of the said Samuel

A. Long therein, is the sum of $893.93¼, with interest on $658.76¼, part thereof, from 1st February, 1882, and that the same is a charge, under the will of John Long, deceased, on the said land." From this decree the appellants, George W. Reherd and James E. Reherd, have been allowed an appeal by one of the judges of this court. And from the foregoing statement it must be patent that the only real contention here is between the sureties of Samuel A. Long on his executorial bond and the appellants, George W. and James E. Reherd, the alienees of the land.

Now, without undertaking to go into a detailed statement of the evidence, we think we may safely say that the acknowledgment in the deed from S. A. Long to B. E. Long, that all of the purchase money had been paid, and the sworn statement of B. E. Long to the same effect, taken in connection with the failure of S. A. Long, the executor, to assert this claim against B. E. Long for so many years, satisfactorily establishes that the whole of the sum of $1,666.66, save and except so much only as was paid by the appellants under the decree in *Long's Ex'or* v. *B. E. Long*, must have gone into the hands of the said executor. And this view is borne out by what will otherwise be an inexplicable circumstance—that is, his permitting a decree to go against him in the suit of *Adam Showalter* v. *Samuel A. Long, &c.*, for the whole of the $1,666.66, whilst he only claims in the suit of *Long's Ex'or* v. *B. E. Long* the sum of $1,155.61, and only succeeds in proving as due the sum of $887.89. But even if we should be mistaken in supposing that the facts above stated fastened upon the executor a liability for this money, still the fact remains that this question has been passed upon by a court of competent jurisdiction, with all of the parties before it, and that decision has never been appealed from. Under these circumstances it must be regarded, for the purposes of this case, as *res judicata.*

Having traced these funds into the hands of the executor,

whose duty it was not to only collect it, but to dispose of it in accordance with the provisions of the will, the only remaining inquiry is, whether for this money, being the proceeds of the sale of real estate, the sureties on the executorial bond can be held liable. The bond was doubtless in the usual form with a condition "for the faithful discharge by him of the duties of hiˢ trust," at any rate we are bound to presume so, in the absence of such direct evidence of its character as could leave no doubt. And upon such a bond the sureties must, we think, be held liable under our statute, as it now reads. Code 1873, chapter 126, section one. In this case, the money received by the executor was from the "payments on the land," as they are described in the will, and if the law stood as it was aforetime, when *Jones* v. *Hobson*, 2 Rand. 483, was decided, the sureties of the executor could not have been held liable. But as the law now stands we see no difficulty in holding them liable. In the case at bar there has been a violation of his trust on the part of the executor in misapplying the proceeds of the sale of real estate, which, under the will, it was his duty to administer, and this brings the case, in our opinion, within the spirit of the statute. But if, however, it was necessary to be technical, this will actually provides for a sale of the real estate in the event of either Samuel or Benjamin being unwilling to take the lands on the terms set forth in the will.

We are of opinion that the circuit court of Rockingham erred in dismissing the bill as to Daniel Bowman and Solomon Garber, the sureties of S. A. Long on his executorial bond, and in holding the land devised by the will of John Long, Sr., to Samuel A. Long chargeable, in the hands of the appellants with the amount of money mentioned in the decree.

The decree, therefore, must be reversed and annulled, and a decree must be rendered against the said S. A. Long and his sureties, David Bowman and Solomon Garber, and in favor of the distributees of John Long, deceased, for the amounts of money in the decree of the said circuit court mentioned.

The decree is as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in dismissing the bill as to Daniel Bowman and Solomon Garber, the sureties of the executor, S. A. Long, and that it also erred in holding that the sum of $893.93 with interest on $658.76, part thereof, from February 1st, 1882, is a charge upon the lands of the appellants, George W. Reherd and James E. Reherd, and in decreeing that the said lands be sold unless S. A. Long, or B. E. Long, or George W. Reherd, or James E. Reherd, or some one for them, or some one of them shall pay the said sum of money to the parties entitled thereto.

It is, therefore, decreed and ordered that for the errors aforesaid the decree appealed from be reversed and annulled, and that the appellees pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here, together with their costs in the said circuit court.

And this court, proceeding to render such decree as the said circuit court ought to have rendered, it is decreed and ordered that the said S. A. Long and his sureties, Daniel Bowman and Solomon Garber, do pay to Adam Showalter, administrator of Catherine Showalter, the sum of $297.97, with interest on $219.58, part thereof, from February 1st, 1882, until paid; to Mollie Young a like sum of $297.97, with interest on $219.58, part thereof, from February 1st, 1882, until paid; and to the plaintiffs, Perry Long, William Long, and Sarah F. Heatwole, children and heirs-at-law of John B. Long, deceased, a like sum of $297.97, with interest on $219.58, part thereof, from February 1st, 1882, until paid. Which is ordered to be certified to the circuit court of Rockingham county.

DECREE REVERSED.